```
             UNITED STATES DISTRICT COURT
           SOUTHERN DISTRICT OF WEST VIRGINIA
                     AT CHARLESTON
```

DAVID RAY WIDENER

       Plaintiff,

v.                          Civil Action No. 2:11-cv-00670

MICHAEL J. ASTRUE,
Commissioner of Social Security,

       Defendant.

<u>MEMORANDUM OPINON AND ORDER</u>

On September 28, 2011, the plaintiff instituted this action seeking judicial review of the Commissioner's final decision pursuant to 42 U.S.C. § 405(g) and § 1383(c)(3).  The sole issue before the court is whether the decision denying plaintiff's claim for income and benefits is supported by substantial evidence.  <u>See</u> 45 U.S.C. §§ 405(g), 1383(c)(3).

By standing order this action was referred to the Honorable Mary E. Stanley, United States Magistrate Judge.  On June 19, 2012, the magistrate judge filed her Proposed Findings and Recommendation, concluding that the Commissioner's final decision be affirmed and this matter dismissed from the docket.

On July 3, 2012, plaintiff filed his objections.

I.   Background

On April 28, 2008, the plaintiff filed applications with the Social Security Administration requesting benefits under Titles II and XVI of the Social Security Act. (Tr. of Proceedings Held Before the Administrative Law Judge ("Tr.") at 24). Title II, 42 U.S.C. §§ 401-433, governs the issuance of disability benefits. Title XVI, 42 U.S.C. §§ 1381-1383f, regulates the payment of supplemental security income. The plaintiff's collective claims were denied on June 26, 2008, and again, after reconsideration, on October 16, 2008.[1] (Id.). He then requested a hearing before an administrative law judge ("ALJ"). By decision dated March 5, 2010, the ALJ determined that the plaintiff was not entitled to benefits. (Id.). Finally, on August 4, 2011, the Appeals Council of the Social Security Administration denied the plaintiff's request for review, rendering the ALJ's determination the final decision of the Commissioner. (Id. at 1).

On September 28, 2011, the plaintiff instituted this action, pursuant to 42 U.S.C. § 405(g) and § 1383(c)(3), seeking judicial review of the Commissioner's decision. By standing

---

[1] Both the ALJ and the magistrate judge describe the plaintiff's various afflictions in detail. (See, e.g., Proposed Findings and Recommendation ("Proposed Findings") at 1-16; Tr. at 53-57).

order, this action was referred to the Honorable Mary E. Stanley, United States Magistrate Judge. The sole issue before the court is whether the decision denying the plaintiff benefits is supported by substantial evidence and resulted from proper application of the law. See 42 U.S.C. §§ 405(g), 1383(c)(3); Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996). In her Proposed Findings and Recommendation, the magistrate judge concluded that the ALJ's decision was supported by substantial evidence and recommended affirming the denial of benefits. (Proposed Findings at 29-30).

The plaintiff's most recent filing, dated July 3, 2012, asserts five objections to the magistrate's conclusions. First, the plaintiff contends that borderline intellectual functioning qualifies as a "severe" impairment. (Pl.'s Objections to Proposed Findings and Recommendation ("Pl.'s Objections") at 2). Second, the plaintiff similarly asserts that his depression should have been classified as "severe." (Id. at 5). Third, the plaintiff claims that recognition of a severe mental impairment, such as borderline intellectual functioning, renders application of the Medical-Vocational Rules improper. (Id.). Fourth, the plaintiff challenges credibility determinations made by the ALJ. (Id.). Fifth, the plaintiff

objects to the magistrate judge's ultimate recommendation in favor of affirming the ALJ's decision. (Id.).

## II. Analysis of Objections

A. Standard Governing Review of Objections to Proposed Findings and Recommendations in Social Security Cases

Should objections be raised to findings and recommendations proposed by a magistrate judge, the supervising district court must conduct de novo review. 28 U.S.C. § 636(b)(1). Review, however, may be limited to "those portions of the report or specified proposed findings . . . to which objection is made." Id.

Moreover, when reviewing final decisions issued by the Commissioner of Social Security, the court's authority is constrained. As noted above, "[t]he findings of the Commissioner . . . if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g); accord § 1383(c)(3). Substantial evidence "consists of more than a mere scintilla . . . but may be somewhat less than a preponderance." Craig, 76 F.3d at 589 (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)). The reviewing court may not reassess conflicting evidence, determine credibility, or substitute its judgment for

that of the Commissioner.  <u>Mastro v. Apfel</u>, 270 F.3d 171, 176 (4th Cir. 2001) (quoting <u>Craig</u>, 76 F.3d at 589).  Should conflicting evidence of disability exist, such that "reasonable minds" could reach inconsistent conclusions, the court must defer to the Commissioner.  <u>Craig</u>, 76 F.3d at 589 (quoting <u>Walker v. Bowen</u>, 834 F.2d 635, 640 (7th Cir. 1987)).  Thus, regardless of whether the reviewing court concurs, the conclusions of the ALJ must be upheld if supported by substantial evidence and derived from proper application of the law.  <u>Hays v. Sullivan</u>, 907 F.2d 1453, 1456 (4th Cir. 1990) (quoting <u>Blalock v. Richardson</u>, 483 F.2d 773, 775 (4th Cir. 1972)).

B. Objections to the Proposed Findings and Recommendation

    1.   Borderline Intellectual Functioning

      The plaintiff first contends that the ALJ erroneously determined his borderline intellectual functioning, evidenced by an intelligence quotient falling within the 70 to 79 range, to be "non-severe" under the relevant regulations.  (Pl.'s Objections at 2-5).  In support of his objection, the plaintiff asserts that <u>Social Security Ruling 85-16</u> conclusively establishes claimants with intelligence quotients below 80 as "severely" impaired.  (<u>Id.</u> at 3-4).  The plaintiff further

5

asserts that his prior experience in a "skilled" position does not preclude the court from classifying his mental impairment as "severe," given that he was employed by his parents and was presumably afforded special treatment. (Id. at 4-5). In response, the Commissioner states that "overwhelming evidence," including the plaintiff's ability to manage his daily affairs, his successful graduation from high school, and his skilled work experience, supports the ALJ's determination that the plaintiff's borderline intellectual functioning was not a "severe" impairment. (Def.'s Resp. to Pl.'s Objections to the Magistrate Judge's Report and Recommendation at 1-3).

The Social Security Administration determines whether applicants are disabled, and thus eligible for benefits, using a sequential five-step analysis. See 20 C.F.R. §§ 404.1520(a)(1), 416.920(a)(1) (2012).[2] The evaluation is terminated if, at any step, the claimant is classified as "not disabled." §§ 404.1520(a)(4), 416.920(a)(4). At step one, a claimant is deemed "not disabled" if engaged in substantial gainful activity. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). The ALJ found that the plaintiff had not participated in substantial

---

[2] The Code of Federal Regulations, part 404, governs claims brought under Title II of the Social Security Act. See § 404.1520(a)(2). The regulations in part 416, which are applicable to claims arising under Title XVI, adopt an identical analytical rubric. See § 416.920(a).

gainful activity since the alleged onset date of his disabilities, (see Tr. at 26), which neither party disputes.

At step two, a finding of "not disabled" is appropriate if the alleged impairment is not "severe."[3] §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). The severity of purely mental impairments is assessed through application of a "special technique." See 20 C.F.R. §§ 404.1520a(a), 416.920a(a) (2011). The reviewing authority must rate the claimant's degree of limitation in four broad functional areas: activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. §§ 404.1520a(c)(4), 416.920a(c)(4). Ratings of "none" or "mild" in relation to the first three functional areas, coupled with a lack of prior episodes of decompensation, generally result in the mental impairment being categorized as "non-severe." §§ 404.1520a(d)(1), 416.920a(d)(1). The ALJ determined that the plaintiff suffered from, at worst, mild limitations with respect to the functional areas of daily life activity, social functioning, and concentration, pace, and persistence. (Tr. at

---

[3] The relevant regulations also require that the impairment be "medically determinable" and satisfy a durational requirement. See §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). The ALJ concluded that the plaintiff's claim of borderline intellectual functioning met both conditions, (see Tr. at 28-29), which neither party disputes.

29).  Furthermore, the plaintiff reported no episodes of decompensation.  (See id.).  Therefore, in accordance with parts 404.1520a(d)(1) and 416.920a(d)(1), the ALJ concluded that the plaintiff's borderline intellectual function was not a "severe" impairment.  (Id.).  The plaintiff does not object to the ratings assigned by the ALJ and affirmed by the magistrate judge, with respect to borderline intellectual functioning.  (See Pl.'s Objections at 1-5).

The impairment may still be classified as "severe," however, should the evidence indicate "that there is more than a minimal limitation in . . . [the claimant's] ability to do basic work activities."  §§ 404.1520a(d)(1), 416.920a(d)(1).  Examples of basic work activities include rudimentary physical functions, such as walking, standing, and carrying items, fundamental sensory perceptions, such as the ability to see, hear, and speak, and the capacity to understand, remember, and execute simple instructions.  20 C.F.R. §§ 404.1521(b)(1)-(3), 416.921(b)(1)-(3) (2011).  Although age, education, and work experience are generally not to be considered when evaluating the severity of a potential disability, §§ 404.1520(c), 416.920(c), assessing the severity of purely mental impairments is a "highly individualized process that requires consideration of all relevant evidence," §§ 404.1520a(c)(1), 416.920a(c)(1).

In this case, the ALJ did not exclusively rely on the Social Security Administration's general policy categorizing impairments that produce only "mild" functional limitations as non-severe. The ALJ also specifically noted that, despite a performance intelligence quotient of 73 and a diagnosis of borderline intellectual functioning, the plaintiff graduated from high school without requiring special education, managed his personal finances, and performed "skilled" labor as a butcher for more than two decades. (Tr. at 29, 31); see Craig, 76 F.3d at 596 n.7 (stating that a plaintiff who worked for four years, despite the onset of her purported disability, could not "as a matter of law, be found disabled without a claim of significant deterioration of her condition"). Therefore, the ALJ determined that the plaintiff's mental impairment would result "in no significant limitations" when tasked with basic work activities. (See Tr. at 28). Although not specifically cited by the ALJ, the plaintiff's medical records also indicate no limitations in understanding, remembering, or executing simple instructions. (Id. at 395). The plaintiff displayed only mild limitations when confronted with detailed instructions. (Id.).

The plaintiff asserts that the ALJ failed to consider the "sheltered" nature of his employment. (Pl.'s Objections at

4-5).  According to the plaintiff, his prior experience was derived entirely from work performed for a family owned business, and thus does not support the inference that he could function in "normal competitive employment."  (<u>Id.</u>).  The ALJ, however, specifically noted that the plaintiff was employed by a "family business, owned by his parents, for close to 25 years." (Tr. at 30).  It appears the ALJ was simply unconvinced by the plaintiff's argument, perhaps because the plaintiff offered little specific evidence of "sheltering."  (<u>See generally</u> Pl.'s Objections; Pl.'s Mot. for Summ. J.; Compl.).  To the contrary, the plaintiff admits being given supervisory responsibilities. (Tr. at 168).  Accordingly, the ALJ's conclusion that the plaintiff's borderline intellectual functioning would produce no significant limitations when performing basic work activities is supported by substantial evidence.

The plaintiff also argues that, regardless of any individualized determination, <u>Social Security Ruling 85-16</u> conclusively establishes claimants with intelligence quotients ranging from 70 to 79 as "severely" impaired.  (Pl.'s Objections at 3-4).  The ruling does note that such claimants may require closer supervision than employees of greater intelligence when executing simple oral instructions, a basic work activity.  SSR 85-16, 1985 WL 56855, at *3.  The ruling does not, however,

conclude that the additional supervision required is more than a minimal limitation. See id.; see also § 404.1520a(d)(1) (requiring that an impairment produce more than minimal limitations in relation to basic work activities to be considered severe); § 416.920a(d)(1). Furthermore, Social Security Ruling 85-16 is inapplicable when determining whether an impairment is severe at the second stage of the Social Security Administration's sequential analysis. See SSR 85-16, 1985 WL 56855, at *1 (describing the ruling as an aid for determining residual functional capacity, a requirement at the fourth step of the sequential evaluation); see also Blea v. Barnhart, 466 F.3d 903, 915-16 (10th Cir. 2006) ("Whether the ALJ will need to follow SSR 85-16 on remand depends upon whether the ALJ's analysis . . . reaches steps four or five."). Finally, although a reference to individuals with intelligence quotients between 70 and 79 in a document outlining later stages of the sequential analysis implies that the Commissioner presumes some such claimants may proceed beyond step two, nothing in the ruling compels the conclusion that all such claimants suffer from a severe impairment.[4] Thus, the ALJ

---

[4] The Eighth Circuit has categorically defined borderline intellectual function as a "severe" impairment, assuming the diagnosis is supported by sufficient medical evidence. See Nicola v. Astrue, 480 F.3d 885, 887 (8th Cir. 2007) (citing Hunt v. Massanari, 250 F.3d 622, 625-26 (8th Cir. 2001)). The Eleventh Circuit, however, recently affirmed the Social Security

properly applied the sequential analysis and relevant regulations to conclude that the plaintiff's impairment was not severe.

Accordingly, the court finds no merit to the plaintiff's first stated objection.

2. Depression

Second, the plaintiff objects to the determination that his diagnosed depression was not a "severe" impairment. (Pl.'s Objections at 5). The plaintiff asserts that "[t]he only assessment by an examining psychologist found at least moderate limitations in function."[5] (Id.).

---

Administration's authority to conduct a more holistic review. See Goodman v. Astrue, No. 10-11595, 2011 WL 31784 (11th Cir. Jan. 6, 2011) (affirming a determination that borderline intellectual functioning did not qualify the claimant as severely impaired, because the "record on the whole" demonstrated "no more than a minimal effect on his ability to do basic work activities"). Given the conflicting non-binding precedent, the court declines to establish a bright-line rule concerning borderline intellectual function, which would contravene the Social Security Administration's stated policy of rendering "highly individualized" decisions. See § 404.1520a(c)(1); § 416.920a(c)(1).

[5] The plaintiff also notes that he was prescribed medication to treat his depression. (Pl.'s Objections at 5). He presents no discernible connection, however, between his prescription and the specific analysis for determining the severity of mental impairments under parts 404.1520a(c)(4) and 416.920a(c)(4). (Id.).

The Social Security Administration reviews "all evidence relevant to . . . claims, including medical opinions." 20 C.F.R. §§ 404.1520b, 416.920b (2012). The governing regulations do not, however, blindly grant controlling weight to medical opinions. See 20 C.F.R. §§ 404.1527(b), 416.927(b) (2012). Less weight is afforded opinions not issued by the treating physician, opinions resulting from a brief treatment relationship or infrequent examination, opinions that conflict with the record, and opinions not sufficiently supported by medical signs and laboratory findings. §§ 404.1527(c), 416.927(c).

In this case, psychologist Paul Mulder and supervised psychologist Jerry Spiegler examined the plaintiff on December 15, 2008. (Tr. at 399). Their joint report, based on that single examination, indicates that the plaintiff suffers from moderate limitations in sustaining concentration, persistence, and pace, (Id. at 395), a finding that potentially precludes classification of the mental impairment as non-severe, §§ 404.1520a(c)(4), § 416.920a(c)(4). The relevant portion of the report, however, lacks any support for the medical conclusion. (See Tr. at 395). Moreover, as the ALJ specifically noted, the report also states that "attention and concentration were within normal limits as evidenced by Digit

Span subscale score of 8." (Id. at 29, 391). The ALJ also expressly afforded the evaluation little weight, as "Mr. Spiegler and Dr. Mulder's opinion is based on a one-time evaluation performed at the request of the claimant's attorney." (Id. at 32). Given the unsubstantiated and conflicting opinions, which resulted from a single examination, substantial evidence indicates that the ALJ was not required to grant controlling weight to the cited report.

Using the special technique detailed in parts 404.1520a(c)(4) and 416.920a(c)(4), the ALJ analyzed the remaining evidence pertaining to the severity of the plaintiff's depression concurrently with evidence of his borderline intellectual functioning. (See id. at 29); see also §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii) (requiring analysis of whether a "combination of impairments" may be severe). The court has reviewed, in this part and in the preceding part on borderline intellectual functioning, the relevant portions of the ALJ's analysis. (See supra Part II.B.1). The court is satisfied that the ALJ's conclusions, applicable to both borderline intellectual function and depression, are supported by substantial evidence and derived from proper application of the law.

### 3. Application of the Grid Rules

Third, the plaintiff objects that the ALJ improperly relied on the medical-vocational guidelines. (Pl.'s Objections at 5). The plaintiff's objection, however, erroneously assumes the categorization of borderline intellectual functioning as a severe impairment. (Id.). Having already concluded that the plaintiff's borderline intellectual function and depression are not severe impairments, the court need not further address the matter.

### 4. Credibility Determinations

Fourth, the plaintiff objects that the ALJ improperly evaluated "credibility," based on the ALJ's perceived failure to acknowledge the plaintiff's "continued reliance upon his parents." (Id.).

The Social Security Administration has established detailed procedures for evaluating alleged symptoms, including pain. See 20 C.F.R. §§ 404.1529, § 416.929 (2011). When determining the credibility of various statements, "the adjudicator must consider the entire case record, including the objective medical evidence, the individual's own statements about symptoms, statements and other information provided by

treating or examining physicians or psychologists and other persons about the symptoms and how they affect the individual, and any other relevant evidence in the case record." SSR 96-7p, 1996 WL 374186, at *1 (July 2, 1996). The decision must contain specific reasons for the finding on credibility. Id. at *2.

In this case, the ALJ refused to fully credit the plaintiff's statements regarding the extent of his symptoms. (Tr. at 31). The ALJ provided extensive analysis in support of her decision, relying upon the conservative nature of the treatment received by the plaintiff, the plaintiff's failure to comply with his assigned treatment regimen, and the broad range of daily activities in which the plaintiff is able to participate without assistance from his family. (See Tr. at 30-31). The ALJ also noted various concerns with several of the submitted medical opinions before rendering a decision. (See id. 32-33). Thus, the ALJ's conclusion concerning the plaintiff's credibility is supported by substantial evidence and her analysis complies with the relevant regulations and rulings. Cf. Mastro, 270 F.3d at 176 (quoting Craig, 76 F.3d at 589) (precluding the reviewing court from determining credibility).

    5.    Proposed Affirmance of the ALJ's Decision

The plaintiff's fifth and final objection is merely a generic disagreement with the overall conclusions of the magistrate judge. For the reasons discussed above, the objection is without merit.

### III. Conclusion

For the foregoing reasons, and having reviewed the record <u>de novo</u>, the court ORDERS as follows:

1. That the Proposed Findings and Recommendation of the magistrate judge be, and it hereby is, adopted and incorporated herein;

2. That judgment be, and it hereby is, granted in favor of the Commissioner;

3. That the Commissioner's final decision be, and it hereby is, affirmed; and

4. That this civil action be, and it hereby is, dismissed and stricken from the docket.

The Clerk is directed to forward certified copies of this written opinion and order to all counsel of record and the United States Magistrate Judge.

        ENTER:  September 24, 2012

John T. Copenhaver, Jr.
United States District Judge